

**SIGNED this 21st day of January, 2022**

Shelley D. Rucker
CHIEF UNITED STATES BANKRUPTCY JUDGE

_____

**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE EASTERN DISTRICT OF TENNESSEE**
[This opinion is not intended for publication as the precedential effect is deemed limited.]

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **Teddy Eugene Cox,** | ) | No. 2:20-bk-51482-SDR |
| | ) | **Chapter 7** |
| **Debtor;** | ) | |
| | ) | |
| | ) | |
| **ABLP REIT, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Adv. No. 2:20-5010-SDR |
| | ) | |
| **Teddy Eugene Cox,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM**

In a motion for summary judgment, the creditor ABLP REIT, LLC, ("ABLP") alleges

that its judgment against the Debtor, Teddy Euguene Cox, should not be discharged because he

1

incurred this debt through fraud and intentional misrepresentation.[1] For the reasons stated below, the court will hold in abeyance a final determination on the motion for summary judgment to allow the movant to supplement the motion on the element of justifiable reliance as discussed below. If the movant does not wish to do so, it should notify the court of its decision; and the court will set a scheduling conference to proceed to trial.

## BACKGROUND

The Debtor filed a petition for a chapter 7 bankruptcy on September 4, 2020. The trustee filed a Report of No Distribution on November 12, 2020. (Doc. No. 22). On December 11, 2020, creditor ABLP filed this adversary proceeding pursuant to Fed. R. Bankr. P. 7001(6) against the Debtor objecting to the dischargeability of its debt under 11 U.S.C. § 523(a)(2)(A). (Doc. No. 26). ABLP contends that it loaned money to the Debtor for his business based on its justifiable reliance on material misrepresentations made by the Debtor, which have resulted in uncollectable debt. The facts are basically as follows. Cox Investments, LLC ("Investments") obtained $1,200,000 in loan proceeds from ABLP. The Debtor is the sole owner of Investments. The Debtor originally applied for the loan on behalf of Reclaimed Resources Inc. ("RRI"). He is also the sole shareholder of RRI and guaranteed the ABLP debt. The Debtor, as owner of Cox Investments, signed the Commercial Loan Application (the "Loan Application") which contained misrepresentations about the property on 191 Williams Street, Bristol, Virginia (the "Property") and business as guarantor on November 2, 2016. (Compl. Ex. C, page 10 of 17; Cox Deposition 37:6-19). The plaintiff obtained a state court judgment for $870,348.91 plus interest and attorney's fees against the Debtor. The judgment amount represents the balance owed by the Debtor as the guarantor after the application of the proceeds from the collateral securing the loan.

---

[1] The plaintiff alleged that its debt was not dischargeable under 11 U.S.C. § 523(a)(2)(A) and (B). This motion seeks summary judgment only under subpart (A).

2

In this adversary proceeding, the plaintiff claims that the Debtor obtained money, property, services, or an extension, renewal or refinancing of credit by false pretenses, a false representation, or actual fraud.

## PROCEDURAL POSTURE

Based on the statement of undisputed facts, the plaintiff contends that it is entitled to a judgment as a matter of law. The Debtor has not responded to the motion. The court will treat the facts in the statement as true and will consider whether the facts are sufficient to support a judgment.

## FACTS

1. On December 29, 2016, Cox Investments, LLC, signed a promissory note for $1.2 million. The Debtor executed the note on behalf of Investments. (Compl. ¶ 4, admitted by Answer ¶ 4).

2. The Debtor executed and delivered to ABLP a Commercial Guaranty, which was signed by the Debtor individually and as president for RRI and Fleet Maintenance of Bristol, Inc., both of which also guaranteed the note. Under the terms the guaranty, the Debtor guaranteed the payment of the Note, including all extensions, renewals, and modifications thereof. (Compl. ¶ 6, admitted by Answer ¶ 6).

3. The Note was secured by a Deed of Trust dated December 29, 2016 (the "Deed of Trust") on the Property, which was owned by Investments. (Compl. ¶ 4, admitted by Answer ¶ 4). The Debtor was and is the sole member of Investments. (Compl. ¶ 5, admitted by Answer ¶ 5).

4. In order to obtain the loan, the Debtor signed a Loan Application on November 2, 2016. (Motion for Summary Judgment Statement of Undisputed Facts, Doc. No. 28 at 8-9). The

Loan Application reflected RRI was the borrower. He also executed Appendix B, which provided information about himself as the owner of RRI. (Compl. Ex. C, page 6-11). In that application to ABLP, the Debtor answered "no" to the question: "Are there any known property code violations for the property?" (Compl. Ex. C, 2).

5. The Debtor submitted the Loan Application and an environmental questionnaire to ABLP for ABLP to consider in making a loan to Investments. (Cox Dep. 6:19-24).[2]

6. In section VI of the Loan Application (Compl. Ex. C, 3), the Debtor, on behalf of the RRI, acknowledged and agreed as follows:

> Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties … (3) the property will not be used for any illegal or prohibited purpose or use, (4) all statements made in this application are made for the purpose of obtaining a business purpose loan, … (7) the Lender and its agents, brokers, insurers, servicers, successors, and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to the closing of the Loan… (Compl. Ex. C, 3).

7. The Debtor signed the Loan Application on behalf of the borrower, noted as RRI, on November 2, 2016. (Compl. Ex. C, 4; Cox Dep. 4:19-21).

8. In section XIV of the Loan Application (Compl. Ex. C, 9), the Debtor,

---

[2] The motion does not provide any insight into how the borrower changed from RRI to Investments, but given the debtor's admission in his deposition that he submitted the application to ABLP in consideration of the loan being to him, the court does not find this missing explanation to be significant to its decision.

as personal guarantor, acknowledged and agreed as follows:

> Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties … (3) the property will not be used for any illegal or prohibited purpose or use, (4) all statements made in this application are made for the purpose of obtaining a business purpose loan, … (7) the Lender and its agents, brokers, insurers, servicers, successors, and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to the closing of the Loan… (Compl. Ex. C, 3).

9. The Debtor provided answers to an environmental questionnaire dated December 15, 2016, that the Debtor signed individually on the line for the borrower. He stated that he was not aware of any governmental notifications relating to past or recurrent violations of environmental laws with respect to the Property. (Compl. Ex. G, 2).

10. On the environmental questionnaire, the Debtor failed to note in his answer to question 2A that the Property was being used as a junkyard and as a waste treatment storage, disposal, or processing facility. Contrary to the Debtor's response to question 2A on the environmental questionnaire, the Property was being used as a junkyard and as a waste treatment storage, disposal, or processing facility, although he did not note it was currently being used as a motor repair facility and a recycling facility. (Compl. Ex. G; Compl. ¶ 7.d; Sanada Aff. ¶ 2).

11. In response to question 4 on the environmental questionnaire, the Debtor indicated that there were no automotive batteries or other chemicals in individual containers of greater than 5 gallons in volume, or 50 gallons in the aggregate, stored on the Property. Contrary to the Debtor's response, automotive batteries, and other chemicals in individual containers of greater than 5 gallons in volume, or 50 gallons in the aggregate, were being stored on the Property. (Compl. Ex. G; Compl. ¶ 7.e; Sanada Aff. ¶ 3).

12. In response to question 5 on the environmental questionnaire, the Debtor stated that there were no industrial drums of chemicals located on the Property. Contrary to the Debtor's response, there were industrial drums of chemicals on the Property. (Compl. Ex. G; Compl. ¶ 7.f.; Sanada Aff. ¶ 4).

13. The Debtor responded "no" to question 9 on the environmental questionnaire, which asked: "Are there currently, or to the best of your knowledge have there been previously, any registered or unregistered storage tanks (above or underground) located on the property?" Contrary to the Debtor's response, there were several above-ground storage tanks on the Property. (Compl. Ex. G; Compl. ¶ 7.g.; Sanada Affidavit ¶ 5).

14. In response to question 14 on the environmental questionnaire, the Debtor stated that he had not been informed of the past or current existence of petroleum products or environmental violations with respect to the Property or any facility located on the Property. Contrary to the Debtor's response, the Virginia Department of Environmental Quality ("DEQ") had previously issued the 2014 Notice of Violation and the 2015 Notice of Violation regarding the Property. Furthermore, many of the tanks on the Property were full of used motor oil. (Compl. Ex. G; Compl. ¶ 7.i.; Sanada Affidavit ¶ 6).

15. In response to question 18 on the environmental questionnaire, the Debtor stated that he had no knowledge of petroleum products, tires, automotive batteries, or any other waste materials having been dumped above grade on the Property. Contrary to the Debtor's response, all of those items were above grade on the Property. (Compl. Ex. G; Compl. ¶ 7.j; Sanada Affidavit ¶ 7).

16. The Debtor represented on the environmental questionnaire, which contains the following representation: "Borrower hereby represents to Asset-Backed Lending Partners, LP that to the best of Borrower's knowledge the above statements and facts are true and correct and to the best of the Borrower's actual knowledge no material facts have been suppressed, misstated, or omitted." (Compl. Ex. G, 3; Cox Deposition, 5:20-25 to 6:1-5).

17. On May 21, 2014, the DEQ issued a Notice of Violation (the "2014 Notice of Violation") to Reclaimed Resources, Inc. for operation of an unpermitted facility for the storage, disposal, treatment, or storage of solid waste on the Property. (Compl. ¶ 7.a.iii.C; Cox Deposition Ex. 6, 9:7-21).

18. On May 14, 2015, DEQ issued another Notice of Violation (the "2015 Notice of Violation") to RRI for continued operation of an unpermitted facility for the storage, disposal, treatment, or storage of solid waste on the Property and failure to comply with deadlines, and subsequent extensions, set forth in a June 25, 2014 Letter of Agreement between RRI and the DEQ. (Compl. ¶ 7.a.iii.D, admitted by Answer ¶ 7.a.iii.D; Cox Deposition Ex. 6, pp 35-38).

19. The Debtor did not provide the 2014 Notice of Violation to ABLP or tell ABLP about it. (Cox Deposition, 7:22-8:23).

20. ABLP had no knowledge of the 2014 Notice of Violation until after the loan closing. (Sanada Affidavit ¶ 8).

21. The Debtor never told ABLP about the 2015 Notice of Violation. (Cox Deposition, 9:16-21).

22. ABLP had no knowledge of the 2015 Notice of Violation until after the loan closing. (Sanada Affidavit ¶ 9).

23. The Debtor also indicated on the Loan Application that RRI was not currently a party to a lawsuit. (Compl. Ex. C, 2).

24. At the time of the Loan Application, RRI was a party to the following action in the Circuit Court for the City of Bristol, Virginia: *Gary M. Hardoby v. Reclaimed Resources, Inc.*, Case # CL16000470-00. (Compl. ¶ 7.b).[3]

25. ABLP relied on the representations the Debtor made in the Loan Application and environmental questionnaire in deciding to approve and fund the loan to Investments. The loan was secured by a Deed of Trust on the Property and the personal guarantee of the Debtor. (Sanada Affidavit ¶ 10 & 11).

26. The representations of the Debtor in the Loan Application and the environmental questionnaire are the types of information ABLP, as a lender, typically relies upon to review and approve similar applications. (Sanada Affidavit ¶ 12).

27. Had ABLP known about the 2014 Notice of Violation, the 2015 Notice of Violation, and that there were material environmental issues with the Property,

---

[3] The adversary proceeding complaint does not contain a copy of the state court complaint nor the return of service. The court has no details regarding the nature of the complaint or the amount at issue. The Statement of Undisputed Facts refers to the Answer ¶ 7b, as though the debtor admitted the allegation. The Answer states that the allegation is neither admitted nor denied. No other materials were provided to support this fact, and E.D. Tenn. L.R.B.P 7056-1 states that failure to provide such support may constitute grounds for denial of summary judgment. Since there are other misrepresentations which are properly supported, the insufficient support for this fact is not determinative.

ABLP would not have approved and funded the loan. (Sanada Affidavit ¶ 13).

28. The Debtor misrepresented his financial condition to ABLP when he provided the letter dated December 16, 2016. (Compl. Exhibit H). In that letter, the Debtor stated that he was purchasing for $200,000.00 real estate located at 100 Vance Tank Road, Bristol, Tennessee, that was valued at $5,000,000.00. Regarding this acquisition, the Debtor stated: "It should be obvious that with the closing on this property this Tuesday it will increase my financial portfolio worth." ABLP later learned that the Debtor had previously rented the Vance Tank Road property and had created environmental hazards thereon, which greatly reduced the value of the Vance Tank Road property below the $5,000,000.00 appraisal. Furthermore, contrary to the Debtor's representation that he was purchasing the Vance Tank Road property, it was actually purchased by one of his entities, RRI VT Bristol, LLC, which was not a guarantor of the debt to ABLP. Therefore, the Debtor misrepresented that the acquisition of the Vance Tank Road property would improve the financial condition of ABLP's borrower, Investments, any of the other corporate guarantors, or the Debtor. (Compl. Ex. H; Compl. ¶ 7.k).[4]

29. Had ABLP known that the Debtor had made material misrepresentations in the Loan Application and in the environmental questionnaire, and that the Debtor had misled ABLP with regard to the acquisition and value of the Vance Tank Road property, ABLP would not have approved and funded the loan. (Sanada Affidavit ¶ 14).

---

[4] The movant states in the Statement of Undisputed Facts that the respondent admits this fact in his Answer ¶ 7.k. Upon review of the Answer, the allegation is neither admitted nor denied by the respondent. Again, the court will not rely on this fact pursuant to E.D. Tenn. L.R.B.P 7056-1. This representation is also of the Debtor's intention to do an act in the future, and there has been no evidence provided that the Debtor knew this representation to be false at the time the letter was provided.

Case 2:20-ap-05010-SDR  Doc 32  Filed 01/21/22  Entered 01/21/22 15:58:36  Desc
Main Document    Page 10 of 19

30. Investments defaulted in making payments to ABLP under the Note. (Compl. ¶ 8, admitted by Answer ¶ 8).

31. Because of such default under the Note, ABLP declared the Note to be in default, accelerating the maturity of the Note, and demanding that the Debtor, as personal guarantor, pay all amounts outstanding under the Note. (Compl. ¶ 9, admitted by Answer ¶ 9).

32. After foreclosing on the Property, ABLP obtained a judgment on March 18, 2019, against the Debtor in the Circuit Court for the City of Bristol, Virginia for the deficiency balance due on the Note (the "Judgment"). The amount of the Judgment ABLP obtained against the Debtor is in the principal amount of $870,348.91, plus accrued interest as of November 29, 2018, of $19,457.52, plus accrued interest thereafter at the rate of 16% per annum until paid, plus ABLP's attorneys' fees and its costs and expenses incurred in the amount of $58,111.33. (Compl. ¶ 12, admitted by Answer ¶ 12; Compl. Ex. I; Sanada Affidavit ¶ 15).

33. The Debtor has made no payments on the Judgment. (Sanada Affidavit ¶ 16).

## JURISDICTION

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and 157 and 11 U.S.C. § 105. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). Venue is proper pursuant to 28 U.S.C. § 1409(a).

## ANALYSIS

The plaintiff has moved for summary judgment under Fed. R. Bankr. P. 7056, which incorporates Rule 56 of the Federal Rules of Civil Procedure and makes it applicable in this adversary proceeding. The court shall grant the movant a judgment if the movant has shown that

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. F.R.C.P. 56(a).

A party asserting that there are no genuinely disputed facts must support that assertion by citing to materials in the record. The plaintiff in this case filed a Statement of Undisputed Material Facts (Exhibit A, Doc. No. 28). This Statement of Undisputed Material Facts is supported by documentary evidence, the Debtor's own admissions, admissions in the Debtor's answer, and Mr. Sanada's affidavit. (*Id.*). The Debtor has not responded to dispute the facts as proposed. The court will now consider whether the undisputed facts entitle the plaintiff to a judgment as a matter of law.

The elements for denying the dischargeability of a debt under 11 U.S.C. §523(a)(2)(A) have been stated by the Sixth Circuit Court of Appeals in *Rembert v. AT&T Universal Card Servs.* (*In re Rembert*), 141 F.3d 277 (6th Cir. 1998). Under 11 U.S.C. § 523(a)(2)(A), a discharge in a Chapter 7 case will not extend to any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by[] false pretenses, a false representation, or actual fraud, other than a statement respecting the Debtor's or an insider's financial condition." To the extent that the exception to discharge would rest on a misrepresentation, "a creditor must prove the following elements: (1) the Debtor obtained money through a material misrepresentation that, at the time, the Debtor knew was false or made with gross recklessness as to its truth; (2) the Debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss. In order to except a debt from discharge, a creditor must prove each of these elements by a preponderance of the evidence. Further, exceptions to discharge are to be strictly construed against the creditor." *In re Rembert*, 141 F.3d at 280-81 (citations omitted).

In reviewing whether the undisputed facts support a finding of the required elements, the court finds that the plaintiff has met the burden for all but one of the elements.

**(1) Debtor Obtained Money by a Material Misrepresentation**

The Debtor or his companies obtained a substantial sum from the loan proceeds. There were unquestionably inaccuracies in the Loan Application, which must be material to result in the debt being declared nondischargable. Case law has clarified that a material misrepresentation under § 523(a) includes "'substantial inaccuracies of the type which would generally affect a lender's or guarantor's decision.'" *Fuller v. Givens* (*In re Givens*), 2021 Bankr. LEXIS 2363*, 2021 WL 3868247, *8 (Bankr. E.D. Tenn. August 30, 2021) (citing *Haney v. Copeland* (*In re Copeland*), 291 B.R. 740, 761 (Bankr. E.D. Tenn. 2003) (citations omitted). In addition, courts have pointed out that "[s]ilence regarding a material fact can constitute a false representation actionable under § 523(a)(2)(A)." *Id.* at 6 (quoting *Fee v. Eccles (In re Eccles)*, 407 B.R. 338, 342 (B.A.P. 8th Cir. 2009) (citation omitted).

The Loan Application and environmental questionnaire contained multiple inaccuracies and omissions that can be subdivided into four groups: (a) misrepresentations about the physical conditions on the Property, (b) omissions of information of two Notices of Violations from the State of Virginia, (c) misrepresentations regarding the ongoing lawsuit against the Debtor's company RRI, and (d) misrepresentations regarding the acquisition of the Vance Tank Road property that would strengthen the borrower's financial condition and that additional property's value.

The court can also conclude that three of the groups of misrepresentations were material. "Material misrepresentations under § 523(a) are 'substantial inaccuracies of the type which would generally affect a lender's or guarantor's decision.'" *Id.* (citing *Haney v. Copeland* (*In re*

*Copeland*), 291 B.R. 740, 761 (Bankr. E.D. Tenn. 2003) (citations omitted). A creditor need not "actually rel[y] on the false statement;" rather, the misrepresentation's impact on the creditor need only be "capable of influencing, or ha[ve] a natural tendency to influence." *Id.* at 8 (*citing United States v. Keefer*, 799 F.2d 1115, 1127 (6th Cir. 1986)). The inaccuracies mentioned regarding the misrepresentation of physical conditions on the Property and the two Notices of Violation are material because "the representations of the Debtor in the Loan Application and the environmental questionnaire are the types of information ABLP, as a lender, typically relies upon to review and approve similar applications." (Sanada Affidavit ¶ 12). It is undisputed that "[h]ad ABLP known about the 2014 Notice of Violation, the 2015 Notice of Violation, and that there were material environmental issues with the Property, ABLP would not have approved and funded the loan." (Sanada Affidavit ¶ 13). In addition, "[h]ad ABLP known that the Debtor had made material misrepresentations in the Loan Application and in the environmental questionnaire, and that the Debtor had misled ABLP with regard to the acquisition and value of the Vance Tank Road property, ABLP would not have approved and funded the loan." (Sanada Affidavit ¶ 14). Materiality is a problem only as to the Debtor's misrepresentation of RRI's state court lawsuit. There are no details about this lawsuit provided to the court, and the movant has not shown that this representation is a substantial inaccuracy that would affect the creditor's decision to loan the money.

With respect to the Vance Tank Road property, the Debtor's letter discussing the acquisition of this additional property does represent that the Debtor would be the one acquiring the Vance Tank Road property and that the acquisition would "increase [his] financial portfolio." The addition of $5 million in property to support a loan of $1,200,000 would be a material addition to the guarantor's financial condition. However, the email also makes clear that the

13

closing of the acquisition has not occurred. It was set to occur on the next Tuesday. (Compl. Exhibit H at 2).

### (2) Debtor Had Knowledge of the Inaccuracy and Intended to Deceive the Creditor

A debtor's intent to deceive is determined under a subjective standard. *See Rembert v. AT&T Universal Card Servs.* (*In re Rembert*), 141 F.3d 277, 281 (6th Cir. 1998) (citing *Field v. Mans*, 516 U.S. 59, 116 S. Ct. 437, 444, 133 L. Ed. 2d 351 (1995). "A debtor intends to deceive a creditor 'when the debtor makes a false representation which the debtor knows or should have known would induce another to advance goods or services to the debtor.'" *In re Nemes*, 2015 Bankr. LEXIS 4585 at *10 (Bankr. E.D. Mich. Nov. 30, 2015) (quoting *Bernard Lumber Co. v. Patrick* (*In re Patrick*), 265 B.R. 913, 916 (Bankr. N.D. Ohio 2001). Fraudulent intent may be inferred from the Debtor's conduct and the totality of the circumstances; however, it is important to note that "[a]ny benefit of the doubt must be resolved in favor of the Debtor, as § 523(a)(2) is strictly construed in [his] favor." *Haney v. Copeland* (*In re Copeland*) 291 B.R. 740, 766 (Bankr. E.D. Tenn. 2003) (citing *XL/Datacomp, Inc. v. Wilson* (*In re Omegas Group, Inc.*), 16 F.3d 1443, 1452 (6th Cir. 1994). In addition, the Debtor must know that the representation is false at the time the Debtor makes the representation. "The failure to perform a mere promise is not sufficient to make a debt nondischargeable, even if there is no excuse for the subsequent breach." 4 Collier on Bankruptcy, ¶ 523.08[1][d] (16th ed. 2018); *see also Cooper v. Cooper* (*In re Cooper*), 2010 Bankr. LEXIS 1625, 2010 WL 1992372, *19-20 (Bankr. E.D. Tenn., May 18, 2010) ("For the purposes of § 523(a)(2)(A), 'false representations and pretenses encompass statements that falsely purport to depict current or past facts.' *Peoples Security Finance Company, Inc. v. Todd* (*In re Todd*), 34 B.R. 633, 635 (Bankr. W.D. Ky. 1983). On the other

14

hand, 'a broken promise to repay a debt, without more, will not sustain a cause of action under § 523(a)(2)(A).'").

The Undisputed Facts establish that the Debtor knew his representations were false on his Loan Application and environmental questionnaire regarding the physical condition of the Property and the omission of the notices of violation.

First, in December 2016 when the Debtor made these representations, the Property was being used as a junkyard and as a waste treatment storage, disposal, or processing facility. In addition, automotive batteries, and other chemicals in individual containers of greater than 5 gallons in volume, or 50 gallons in the aggregate, were being stored on the Property. There were industrial drums of chemicals on the Property; there were several above-ground storage tanks — many of which were full of used motor oil — on the Property. There were above grade waste materials such as petroleum products, tires, and automotive batteries dumped on the Property. The Debtor was the sole owner and president of every company involved with the Property. Given the number of misrepresentations, their significance in the analysis of the value of an operation of this sort, and in the absence of any alternative explanation, the court can only conclude that the Debtor misrepresented the conditions of the Property with respect to the facts stated above with the intent to obtain the loan by deceiving ABLP about the Property's condition.

The Debtor also intended to deceive ABLP with respect to failure to disclose the 2014 and 2015 Notices of Violation from the DEQ on the Loan Application. The Debtor admits to having received the Notices of Violation and to having answered "no" on the Loan Application about whether there were any "known violations." In his deposition, the Debtor testifies that, to his recollection about the Notices of Violation, he had "no reason to send them something that

15

came in the mail that was in a process of being worked on." (Cox Deposition, 53:8-10). Thus, the circumstances indicate that the Debtor knew of the violations when he answered "no" on the Loan Application. He answered "no," not because he did not know of the existence of the violations, but rather because he thought he would be able to cure the violations before his lender learned of them. (Cox Deposition, 52:22-53:23). He was aware of the violations and their significance by knowing they were a problem that would have to be fixed.

The other two groups of misrepresentations are not supported by facts that allow the court to find knowledge and intent. ABLP claims the Debtor failed to disclose that he was party to a lawsuit at the time of completing his Loan Application when asked about it. The lawsuit on which ABLP relies was filed in the Circuit Court for the City of Bristol, Virginia: *Gary M. Hardoby v. Reclaimed Resources, Inc.*, Case # CL16000470-00. The lawsuit was filed against RRI, not the Debtor or Investments, on August 18, 2016. Default judgment was entered against RRI on November 28, 2016. ABLP offers no evidence of when service on RRI occurred. Therefore, the court finds that this misrepresentation may not have been knowingly made on November 2, 2016. Similarly, the court does not find that the Debtor's letter about his intent to acquire the Vance Tank Road property and, thereby, increase his worth constitutes a misrepresentation. The letter makes clear that the acquisition will occur in the future. The record does not reflect any misrepresentations about ownership after the closing. The Debtor's actions in this regard do not rise to the level of a misrepresentation under § 523(a)(2)(A) because it is a representation about future action, and the record is silent as to how the Vance Tank Road property's ownership by one of the Debtor's companies may have actually affected his balance sheet.

Nevertheless, based on reasonable inference from the number of misrepresentations relating to the first two groups of facts, the court finds that the Debtor was intentionally trying to deceive ABLP about the borrower's and guarantor's condition in order to get the loan proceeds.

**(3) The Creditor Did Not Justifiably Rely on the False Representations**

Section 523(a)(2)(A) requires not only that the creditor rely on the false representation but that the reliance is justifiable. The Supreme Court has explained that justifiable reliance, as defined in the Restatement (Second) of Torts (1976) is the appropriate standard for determining actual fraud under 523(a)(2)(A). *See Field v. Mans*, 516 U.S. 59, 70, 116 S. Ct. 437, 133 L. Ed. 2d. 351 (1995).

> Justifiable reliance is gauged by "'an individual standard of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case.'" *In re Vann*, 67 F.3d 277, 283 (11th Cir. 1995), (quoting Prosser & Keaton on Torts §108 at 751 (5th ed. 1984)) (emphasis in original). "'It is only where, under the circumstances, the facts should be apparent to one of the plaintiff's knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation on his own.'" *Vann*, at 283, (quoting Prosser & Keaton on Torts at 752).

*Tower Credit, Inc. v. Carter* (*In re Carter*), 539 B.R. 753, 758 (Bankr. M.D. La. Sept. 24, 2015).

In other words, a creditor may take a debtor's representation at his word until the creditor has reason to doubt. When a creditor has reason to doubt the representations made by a debtor, the creditor cannot turn a blind eye and still maintain justifiable reliance.

Mr. Sanada testified that, in deciding to make the loan, ABLP relied on the representations of the Debtor that the Property did not contain the various conditions outlined in the environmental questionnaire and that the Property had not been subject to a property

violation. However, other undisputed facts raise an issue of whether this reliance was justifiable. Mr. Sanada testifies that the conditions on the Property were contrary to the Debtor's Loan Application answers because there were automotive batteries and drums of chemicals above grade, but he does not state when or how ABLP found out about these conditions. Looking at the environmental questionnaire, the Debtor did disclose that the Property was being used as a "motor repair facility" and a "recycling facility." He also disclosed that there was currently or previously "stained soil" on the Property. If ABLP knew that the Debtor's answers on the environmental questionnaire could not be true, then it cannot be said that ABLP justifiably relied on the Debtor's answers. On their face, the answers seem contradictory with other information provided. Mr. Sanada's affidavit is silent on whether he followed up on a) how a motor repair facility could be operated without petroleum products, b) what exactly was being recycled, or c) what was staining the soil. The affidavit is silent about whether he regularly made loans in excess of $1,000,000 without visiting the property or conducting a title search to confirm property ownership. In addition, if ABLP knew about the conditions on the Property and that they were inconsistent with the Debtor's Loan Application answers, then ABLP could not turn a blind eye to the red flags. Because ABLP has not carried its burden to show that the contradictory answers did not create red flags that the Debtor's Loan Application answers were misleading, the court cannot find that ABLP has shown justifiable reliance. The court will allow the plaintiff to supplement its motion to address these deficiencies or to present evidence at trial about how it addressed the answers and confirm that no representative ever visited the Property.

### (4) Reliance on the False Representation was the Proximate Cause of the Loss

The false representation must be the proximate cause of the loss.

> As to the requirement that the reliance be the proximate cause of
> the loss, "proximate cause may be established by showing the

18

> conduct was a substantial factor in the loss, or the loss may be reasonably expected to follow." *Sheen Falls Strategies, LLC v. Keane* (*In re Keane*), 560 B.R. 475, 489 (Bankr. N.D. Ohio 2016) (citation omitted). Proximate cause is something more than what Plaintiffs might have done in a hypothetical circumstance; instead, it "depends on whether the [debtor's] conduct has been so significant and important a cause that the [debtor] should be legally responsible.'" *Allen v. Smith* (*In re Smith*), 567 B.R. 529, 539 (Bankr. M.D. Tenn. 2017) (quoting *In re Hermoyian*, 466 B.R. at 370) (citations omitted)). In other words, "there must be 'a direct link between the alleged fraud and the creation of the [liability].'" *In re Copeland*, 291 B.R. at 767 (quoting *McCrory v. Spigel* (*In re Spigel*), 260 F.3d 27, 32 n.7 (1st Cir. 2001)) (emphasis added).

*Lansden v. Jones* (*In re Jones*), 585 B.R. 465, 510 (Bankr. E.D. Tenn. January 26, 2018).

Should the plaintiff be able to establish the justifiable reliance on the misrepresentation, the court has not found any evidence in the support of the undisputed facts that would create an issue of fact with respect to the Plaintiff's contention that its reliance on the misrepresentations caused its losses.

## **CONCLUSION**

The plaintiff has failed to prove its reliance was justifiable. However, in light of the Debtor's failure to respond, the court believes the movant should be granted an opportunity to properly support the motion as to the element of justifiability. Movant shall have until 21 days after the entry of this order to supplement the motion. The Debtor shall have 21 days to respond after the supplement is filed. The court will hold entry of an order disposing of the motion until the periods to supplement the motion and to respond have run. A separate order will enter.

###